WILLIAM L. OSTERHOUDT (SBN 043021)
DOLORES T. OSTERHOUDT (SBN 215537)
Law Offices of William Osterhoudt
135 Belvedere Street
San Francisco, California 94117
Telephone (415) 664-4600
Facsimile (415) 664-4691
Email: osterhoudt@aol.com

Attorneys for Defendant
Damien Sexton

UNITED STATES DICSTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DAMIEN SEXTON, <br><br> Defendant. | Case No. CR-07-0742 (EDL) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISCOVERY** <br><br> Date: April 1, 2008 <br> Time: 10:30 a.m. <br> Dept.: Judge Elizabeth D. Laporte |

# INTRODUCTION

Defendant Damien Sexton is charged in a two count indictment with violating federal law relating to appropriate conduct of a passenger on a commercial aircraft. Count One alleges that on March 21, 2007, while abroad United Airlines Flight 189, traveling from Philadelphia to San Francisco, the defendant assaulted an individual, in violation of 49 U.S.C. Section 46506(1) and 18 U.S.C. Section 113(a)(4). Count Two likewise alleges that the defendant assaulted an individual, by threatening to inflict injury upon such person, in violation of 49 U.S.C. Section 46506(1) and 18 U.S.C. Section 113(a)(5).

Defendant's counsel has informally requested Rule 16 discovery, including many items sought by way of this motion. The government has informed counsel for the defendant that all documents and other evidence in the possession of the government have been provided. The defendant seeks by the instant motion to confirm that this is the case, and to be similarly assured that should further evidence come into the government's possession which is discoverable under Rule 16 of the Federal Rules of Criminal Procedure and the dictates of *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny*,* this material too will provided forthwith.

Additionally, there is a single category of material which we believe is discoverable -- consisting of the contact information of the individuals named in FD-302 reports in this case and a passenger manifest for United Airlines Flight 189 -- which has not been given to the defense. We have been informed that the government has not sought to obtain, and therefore does not have some of this information, and refuses to provide that which it does have. As set forth below, this information is necessary to the preparation of the defense, and is easily obtainable by the government, while the defense can do so only with great difficulty, if at all. Therefore we ask that the government be directed to obtain this information, and to provide it to the defense in a timely fashion.

**DISCUSSION**

1. Discovery Provided By the Government To Date

As indicated above, the government informed defense counsel that it has provided all documentary and physical evidence in its possession. The defendant appreciates these disclosures, and asks the government to confirm that each category of discovery mandated under Rule 16 of the has been provided to date. This includes (1) the defendant's own statements, whether recorded or unrecorded, written or oral (Rule 16(a)(1)(A)); *United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982); (2) prior similar acts of the defendant which the government intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence; (3) results or reports from any physical or mental examination, and of any scientific test or experiment, if the item is within the government's possession, custody or control; the attorney for the government knows or through

the existence of due diligence could know that the item exists; and the item is material to preparing the defense or the government intends to use the item in its case-in-chief. (Rule 16(a)(1)(D)); and (4) any material physical or documentary evidence, including books, papers, documents, photographs, tangible objects and other physical evidence. Documents are material if there is a strong indication that they play an important role in uncovering admissible evidence, they aid in witness preparation or corroborate testimony, and/or assist in impeaching and rebuttal. *See United States v. Felt*, 491 F.Supp. 179 (DC. Cir. 1979). Trial courts have broad discretion in deciding what items are material to the preparation of the defense. *See United States v. Cadet*, 727 F.2d at 1468. (Rule 16(a)(1)(C)).

2. Exculpatory Evidence

In accordance with *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the production of information from whatever source, form or nature which is favorable to the defendant is required. This request includes information which is material to the issue of guilt or punishment, *id.*, *United States v. Bailleaux*, 685 F.2d at 1113, either through an indication of the defendant's innocence, negation of any element of the charge offense, or through the potential impeachment of government witnesses or contradiction of government evidence. See *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Bagley v. Lumpkins*, 798 F.2d 1297 (9th Cir. 1986). Due process also requires the production of information which may be of benefit to the defendant in preparing a defense at trial.

3. Names and Contact Information of Witnesses of the Crimes Alleged In the Instant Case

The defendant is charged with assaulting an airline passenger during United Airlines Flight 189, on route from Philadelphia to San Francisco, on March 21, 2007. Count One alleges that an assault occurred when, by defendant's furtive movements as he attempted to exit his seat, he injured the leg of a fellow passenger (Patricia Mace) who was sitting in the aisle seat of his row. Count Two alleges that an assault took place when the defendant threatened a person aboard Flight 189, with the apparent present ability to cause injury to said person.

*Memorandum of Points & Authorities in Support of Motion for Discovery*

The evidence that the defendant has been able to obtain through discovery shows that there is considerable factual dispute about the events giving rise to this case. The discovery indicates that the Pilot David Atala, First Officer Michael Brennan, Purser Charilyn Ahmina Kalemani-Smith, Flight Attendants Rudy Yamin and Evon Hook, and passengers Steven Bengis, Mark Helsel, William Staples, Geoff Owens, and Patricia Mace were interviewed by police officers and FBI agents after landing in San Francisco.

Mr. Bengis indicated that he was in the same row as the defendant, and that he handcuffed the defendant after the defendant became inebriated, fell into the aisle and loudly stated that he needed to help fly the airplane. According to Mr. Bengis, after he was subdued, the defendant sat quietly for the remainder of the flight.

William Staples claims to have heard the defendant use profanity and stated that Mr. Sexton said "I'm getting off this plane" and "I'll kill all of you." Mr. Staples stated that the attendants continuously plied Mr. Sexton with vodka tonics leading up to this incident, and did nothing of value in dealing with this passenger. Another passenger, Mark Helsel, stated that he duct-taped the defendant's legs together, at the Pursuer's request.

Despite the expressed views to the contrary from passengers and crew, Purser Kalemani-Smith expressed a very high opinion of her own reaction to Mr. Sexton's intoxication and alleged subsequent outburst. She stated that the defendant was being disruptive, so she took his drink away. At some point she saw that he had moved into the aisle, and then a group of passengers got on top of him to subdue him, which frightened Mr. Sexton. As soon as he was assured that he would not be injured by the group, he was cooperative. The Pilot expressed a marked lapse of confidence in the Purser.

First Officer Michael Brennan and Pilot David Atala stated that Flight Attendant Hook, originally informed the cockpit that there had been a fight between passengers (which prompted the Pilot to report an emergency to the tower); Flight attendants then failed to respond to calls from the cockpit to the cabin. When Hook next communicated with the cockpit, she recanted the claim

that there had been a fight, stating instead that Mr. Sexton may have fallen into the aisle, and that it was not a "big deal."

Flight Attendant Rudy Yamin stated that the defendant did not become a disruption until his drink was taken from him, at which point he started to yell. Yamin reported that he then heard a commotion and observed the defendant attempting to get out of his seat – at which point Mr. Sexton was tackled to the floor by other passengers.

The passenger seated next to Mr. Sexton – Patricia Mace – claimed to have received a bruise from the defendant, as he tried to get over her and into the aisle. The charge alleged in Count One is about the supposed injury received by Ms. Mace. Reports indicate, however, that Ms. Mace refused to go to the medic station, and did not bother to answer a page to speak with the police upon arriving in San Francisco. A telephonic FBI interview of Ms. Mace was conducted on March 28, 2007, in which she described Mr. Sexton as having been served at least 9 drinks in the first few hours of the flight, even though clearly intoxicated. She stated that after his final drink was taken away from him, the defendant stood up and yelled that he was "going to kill the pilot," and that he "wanted this plane landed now."

As is clear from the above summary of the investigative reports in this case, there is a great deal of ambiguity about what, when, why and how the events of this case unfolded. Some of these witnesses indicated in their interviews that Mr. Sexton was verbally abusive to the passengers around him, while others stated simply that he was yelling at the movie, which was playing. One nearby passenger indicated that Mr. Sexton was irritated because the Pilot, apparently chatty and informative, kept interrupting the movie with helpful announcements. Some averred that he stepped into the aisle, while others stated that he fell, and still others claimed he was tackled before he got there by a group of male passengers. There is a marked difference between when the Pilot believes these events occurred, and when the flight attendants think they happened. The witnesses do not agree about what beverage the defendant was drinking or how many he had. Ms. Pace is the only person who allegedly saw and heard Mr. Sexton "stand up" and

*Memorandum of Points & Authorities in Support of Motion for Discovery*

yell "that he was going to kill the pilot." Yet this is the kind of thing that a number of people would have been expected to hear, if it happened.

The defendant has requested that the government provide contact information for the specific individuals named herein, as well as a passenger manifest for Flight 189.[1] The statements of these individuals are at variance with each other in the most basic and crucial respects, and must be investigated in order for Mr. Sexton to prepare his defense. The government's response that it does not have any obligation to provide the information sought herein cannot be squared with the mandate of *Brady v. Maryland*, 373 U.S. 83 (1963), which requires that all evidence which is favorable to the defense be provided in discovery, nor with *United States v. Cadet*, 727 F.2d 1453(9th Cir. 1984) which made it clear that the defense is entitled to disclosure of persons who witnessed an alleged crime even thought the government has not designated them as trial witnesses:

> "A person who has actually witnessed a crime through any of his senses can either provide evidence which is favorable to the defense or which may tend to raise a reasonable possibility that the accused is guilty. Thus, it was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense. No further showing of materiality was required. The government offered no evidence to rebut this logical inference. No legitimate governmental interest has been suggested which would justify denying to the accused the identity of a witness to a crime whose testimony may be exculpatory."

*Cadet,* 727 f.2d at 1469. In *Gregory v. United States,* 125 U.S. App. D.C., 140 (D.C. Cir. 1966) the appellate court emphasized that "[w]itnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."

---

[1] The government has told the defense that it has provided all evidence in its possession. We note, however, that the investigative reports provided in discovery, which form the backbone of the government's case, were redacted to specifically exclude the contact information for the potential witnesses sought herein. We also note that both Kalemani-Smith and Rudy Yamin indicated that contact information was collected from witnesses to be given to law enforcement. Therefore, we believe that if the government does not have this information, the investigative agencies that provided it to the prosecution certainly will.

*Memorandum of Points & Authorities in Support of Motion for Discovery*

6

It is for this reason that defendant seeks disclosure not only of contact information for the witnesses who have been identified, but also a manifest or other flight document, illuminating which passengers were seated near the defendant's seat. The importance of this information is underscored by the fact that the passengers identified by the government provide versions of the event which often differ sharply from one another, giving divergent recollections of words spoken and actions taken by Mr. Sexton. The discovery provided, while suggesting strongly that Mr. Sexton may have been served and consumed too many alcoholic beverages, fails to disclose any criminal intent on his part, general or specific. The discovery suggests that in his haste to get into the aisle Mr. Sexton came into contact with Ms. Mace, bruising her leg. But there is no suggestion that he intended to do so, and several passengers say that he simply fell into the aisle where he was tackled by other passengers. We need to find out what passengers who observed this incident, or who was near enough to observe it, saw and heard.

The government cannot avoid its obligation to turn over the discovery sought herein by claiming that it does not presently have possession of the information. See *Kyles v. Whitley,* 514 U.S. 419, 437 (1995)(The requirements of *Brady* impose upon the government "a duty to learn of any favorable evidence known to others acting on the government's behalf in the case") and *United States v. Wood,* 57 F.3d 733, 737 (9th Cir. 1995)("Under *Brady* the agency charged with the administration of the statute, which has consulted with the prosecutor in the steps leading to the prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute"). Consistent with these cases, the prosecution in the instant case must apprise itself of and make available to the defense information pertaining to the witnesses to the defendant's alleged crime. If the government does not have the information sought, it should be directed to obtain it from the law enforcement agencies involved in this case – including the TSA, the police department and/or the Federal Bureau of Investigation. We submit that it would not be appropriate to put the onerous on the defendant to obtain information about the passengers whose names were revealed, when this would be an expensive and time consuming endeavor, and all the prosecution has to do is provide

*Memorandum of Points & Authorities in Support of Motion for Discovery*

7

unredacted copies of its reports.  With respect to other passengers, who have not been identified, defendant's only recourse would be by way of a Rule 17(c) subpoena, directed to the Airline, which would undoubtedly be far more amenable to a request from the prosecution for a flight manifest and passenger seating chart.

**CONCLUSION**

By the foregoing, Defendant Sexton respectfully asks the Court to order the government to produce the names and contact information of potential witnesses to the crimes allegedly committed by the defendant on March 21, 2007, aboard United Airline Flight 189, and specifically the contact information for witnesses who have given statements regarding this matter, and the flight manifest, containing other potential witnesses.  We further ask that the government confirm that it has provided all discovery which has come into its possession.

                                              Respectfully submitted,

Dated: March 11, 2008

                                              <u>/s/ William L. Osterhoudt</u>
                                              WILLIAM L. OSTERHOUDT
                                              Attorney for Defendant

**PROOF OF SERVICE**

I, the undersigned, declare as follows:

I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen (18) and am not a party to this action. My business address is 135 Belvedere Street, San Francisco, California 94117.

On the date set forth below, I caused to be served the document entitled:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRETRIAL DISCOVERY

on the party in this action as follows:

Allison Marston Danner
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, CA 94102
allison.danner@usdoj.gov

__X__ [BY ELECTRONIC SERVICE] Utilizing the ECF system of the United States District Court for the Northern District of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: March 11, 2008                    /s/ Christopher W. Choy
                                         Christopher W. Choy